## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SHARITA T. PATTERSON,<br><br>                          Plaintiff,<br><br>     v.<br><br>JOSHUA OLIVERI, *et al.*,<br><br>                          Defendants. | Civil Action No. 25-1292 (JXN)(CF)<br><br><br>**<u>OPINION</u>** |

**<u>NEALS</u>**, District Judge

Before the Court is *pro se* Plaintiff Sharia T. Patterson's ("Plaintiff") motion to reinstate her case and accept her untimely application to proceed *in forma pauperis* ("IFP"). (ECF No. 18.) The Court has carefully considered Plaintiff's motion and screened her Complaint (ECF No. 1) pursuant to 28 U.S.C. § 1915. For the reasons set forth below, the Court **GRANTS** Plaintiff's untimely IFP application (ECF No. 18-1), **DISMISSES** the Complaint in part, and **STAYS** the Complaint in part.

## I.    BACKGROUND

### A.    Statement of Facts

Port Authority Police Officer Joshua Oliveri ("Oliveri") arrested Plaintiff on July 25, 2023, pursuant to Complaint Warrant W-2023-002969-0906.[1] (*See* ECF No. 10.) The Complaint Warrant charged Plaintiff with unlawfully possessing a handgun without a permit, impersonating

---

[1] In ruling on a motion to dismiss, the Court may consider the complaint, exhibits attached to it, and matters of public record, such as Plaintiff's arrest record, complaint warrant, and indictment. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider documents integral to or explicitly relied on by the complaint. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

a law enforcement officer, theft of services, obstructing the administration of law, exhibiting a false government document, and a disorderly persons offense. (*Id.*)

Plaintiff alleges that, at the time of her arrest, she was a special patrolman for the New York Police Department ("NYPD"). (Compl. at *2,[2] ECF No. 1.) Plaintiff claims Oliveri "prematurely concluded" that Plaintiff's NYPD "credentials and firearm registration" were falsified. (*Id.*) Oliveri arrested Plaintiff and she spent nine days in jail. (*Id.* at *3.) Following her arrest, Plaintiff lost her job and apartment. (*Id.*)

In March 2024, a grand jury indicted Plaintiff for the crimes charged in the Complaint Warrant. *See State v. Sharita T. Patterson*, Indictment No. 24-03-342-I. Public Defender Michael Gronick ("Public Defender") initially represented Plaintiff. (Compl. at *3.) Plaintiff claims she fired him because he "failed to take appropriate action" and inadequately represented her. (*Id.*) Plaintiff then retained defense attorney Joseph Fortunato ("Attorney"). (*Id.*) Dissatisfied with the Attorney's work, Plaintiff similarly fired him. (*Id.*)

The Hon. Carlo Abad, J.S.C. ("Judge Abad") presided over Plaintiff's case. (*Id.* at *4.) The Prosecutor was Eric Vivino ("Prosecutor"). (*Id.*) Plaintiff claims the Prosecutor maliciously prosecuted her because he knew Plaintiff had a valid firearm license. (*Id.*) And she argues that Judge Abad violated her right to a speedy trial by allowing the case to continue. (*Id.*) The case appears to be ongoing. *See State v. Sharita T. Patterson*, Indictment No. 24-03-342-I

### B.    Procedural History

On February 13, 2025, Plaintiff sued Oliveri, the Public Defender, her Attorney, Judge Abad, and the Prosecutor (collectively, "Defendants"). (*See generally* Compl.) The Complaint includes claims for: false imprisonment against Oliveri (Count I); malicious prosecution against

---

[2] Pincites preceded by an asterisk (*) use ECF pagination.

all Defendants (Count II); violation of Plaintiff's right to a speedy trial against all Defendants (Count III); violation of Plaintiff's due process rights against all Defendants (Count IV); wrongful arrest against Oliveri (Count V); abuse of authority against Oliveri (Count VI); abuse of power against the Prosecutor and Judge Abad (Count VII); and violation of Plaintiff's right to bear arms against all Defendants (Count VIII). (*See id.*) Plaintiff also sought to proceed IFP but did not submit the required long-form IFP application. (*See* IFP Appl., ECF No. 1-1; Order, ECF No. 14.) On September 11, 2025, the Court denied Plaintiff's IFP application as incomplete and provided that Plaintiff could submit a complete IFP application by September 25, 2025. (*See* Order.)

On November 5, 2025, Plaintiff moved to reopen her case and for the Court to accept a new IFP application, which she attached to her motion. (*See* Moving Br., ECF No. 18.)

## II.    **LEGAL STANDARD**

Under 28 U.S.C. § 1915, a plaintiff may proceed with a civil action IFP without paying the court filing fee. The IFP statute requires that a plaintiff submit a complete financial affidavit to demonstrate financial need. 28 U.S.C. § 1915(a). *See Atl. Cnty. Cent. Mun. Ct. Inc. v. Bey*, No. 24-105, 2024 WL 1256450, at *1 (D.N.J. Mar. 22, 2024) ("The requirement that a plaintiff demonstrate financial need through submission of a complete financial affidavit is an essential part of the statute."). Under the statute, the Court must assess the financial affidavit to determine whether the plaintiff can proceed IFP. 28 U.S.C. § 1915(a).

The Court must also decide *sua sponte* whether the Complaint should be dismissed. 28 U.S.C. § 1915(e). An IFP complaint must be dismissed if it is frivolous or malicious, fail to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii). To survive *sua sponte* screening for failure to state a claim, a complaint must allege "sufficient factual matter" to show that the claim

is facially plausible. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (citation omitted). "[A] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In screening a complaint to verify whether it meets these standards, however, this Court is mindful of the requirement that *pro se* pleadings must be construed liberally in favor of the plaintiff. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). "Yet there are limits to [the Court's] procedural flexibility" and "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996)).

## III.    DISCUSSION

### A.    The IFP Application

Plaintiff submitted the required long-form IFP application nearly two months past the Court's deadline to do so. Nevertheless, because the Court liberally construes *pro se* filings, the Court considers Plaintiff's new IFP application as though it were timely submitted.

The decision to grant IFP status "turns on whether an applicant is 'economically eligible' for such status." *Taylor v. Sup. Ct. of N.J.*, 261 F. App'x 399, 400 (3d Cir. 2008) (quoting *Sinwell v. Shapp*, 536 F.2d 15, 19 (3d Cir. 1976)). A person need not be "absolutely destitute" to proceed IFP. *Id.* Rather, the applicant "must show the inability to pay the filing and docketing fees." *Id.* Plaintiff attests that she has no income or assets. Because she is unable to pay court fees, the Court **grants** Plaintiff's IFP application.

**B.      The Complaint**

### i.      *Judge Abad is Immune from Suit*

The Court starts with the claims against Judge Abad. Judges have absolute immunity from suit for any actions taken in a judicial capacity. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Judges cannot be sued even for unfair, bad faith, malicious, or corrupt actions taken in a judicial capacity. *Id.* Judicial immunity does not, however, extend to non-judicial actions or judicial actions taken "in the complete absence of all jurisdiction." *Id.* at 12.

Plaintiff seeks to hold Judge Abad liable for malicious prosecution, abuse of power, and violations of Plaintiff's rights to bear arms, due process, and a speedy trial. Yet all of Judge Abad's complained-of acts were judicial. Whether an action is judicial relates to "nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978); *see also Kajla v. Cleary*, 821 F. App'x 119, 121 (3d Cir. 2020) ("Nonetheless, it is beyond dispute that '[a] judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts.'" (quoting *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006))). Denying Plaintiff's various motions and holding a trial are quintessentially judicial functions. Moreover, Plaintiff alleges she dealt with Judge Abad as the judge presiding over her criminal case and accordingly dealt with Judge Abad in his judicial capacity. *Stump*, 435 U.S., at 362. Therefore, Judge Abad's acts were judicial.

Judge Abad, moreover, did not act in a complete absence of jurisdiction. A judge does not act in a complete absence of jurisdiction if the court "has *some* subject matter jurisdiction." *Figueroa v. Blackburn*, 208 F.3d 435, 443–44 (3d Cir. 2000) (emphasis added) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)). The difference between having *no* jurisdiction and

*some* jurisdiction is critical. For instance, if a judge "invested only with authority over wills and the settlement of estates of deceased persons" held a criminal trial, judicial immunity would not attach to the judge's conduct at the criminal trial. *Bradley v. Fisher*, 80 U.S. 335, 352 (1871). But if a judge "invested with general criminal jurisdiction over offences committed within a certain district" held a trial for a made-up crime, judicial immunity would attach. *Id.* Judge Abad is a New Jersey Superior Court judge. (Compl. at *2.) The New Jersey Superior Court has jurisdiction to hear indictable and non-indicatable criminal matters. *See* N.J. Ct. R. 3:1-5, 3:1-6. Thus, because Judge Abad could hear Plaintiff's criminal matter, Judge Abad did not act in a complete absence of jurisdiction and is absolutely immune from suit. Accordingly, the Complaint is **dismissed *with prejudice*** as to Judge Abad.

### ii.    The Prosecutor is Immune from Suit

Plaintiff sued the Prosecutor for malicious prosecution (Count II), abuse of power (Count VII), and violations of her Second, Sixth, and Fourteenth Amendment rights (Counts III, IV, VIII). Reading Plaintiff's claims liberally, the Court construes them as having been brought under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6–2(c).

The analysis of § 1983 and NJCRA claims is the same. *See Gormley v. Wood-El*, 218 N.J. 72, 112–13 (2014). To state a § 1983 claim, the plaintiff must show: (1) someone deprived the plaintiff of a right, and (2) the person who deprived plaintiff of the right acted under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Prosecutors, however, are "absolutely immune" from § 1983 liability for any act "intimately associated with the judicial phase of the criminal process." *Harris v. Krasner*, 110 F.4th 192, 196 (3d Cir. 2024) (citation omitted). This includes claims arising from a prosecutor's conduct in securing an indictment, *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992), "initiating a prosecution and in presenting the State's case," *Imbler*

6

*v. Pachtman*, 424 U.S. 409, 431 (1976), or "appearing before a judge and presenting evidence," *Burns v. Reed*, 500 U.S. 478, 491 (1991).

Plaintiff asserts the Prosecutor, in "maliciously" prosecuting a criminal case against Plaintiff, violated her constitutional rights. But initiating and maintaining a criminal case is "intimately associated with the judicial phase of the criminal process." *Harris*, 110 F.4th at 196. So, the Prosecutor is absolutely immune from this lawsuit. Therefore, the constitutional and malicious prosecution claims against the Prosecutor (Counts II, III, IV, VIII) are **dismissed *with prejudice***.

The "abuse of power" claim (Count VII) is similarly dismissed with prejudice. § 1983 seeks to prevent "abuses of power by those acting under color of state law." *Robertson v. Wegmann*, 436 U.S. 584, 591 (1978). But the plaintiff must allege "[s]ome underlying violation of the U.S. Constitution or state law." *Cousar v. Morgan*, No. 22-114517, 2022 WL 2532679, at *7 (D.N.J. July 7, 2022). "Abuse of power" is not "an independently cognizable" § 1983 claim. Such an allegation "adds nothing of legal significance" to the complaint because § 1983 does not require proof the defendant abused their power. *Id.* (quoting *O'Bradovich v. Village of Tuckahoe*, 325 F. Supp. 2d 413, 426 (S.D.N.Y. 2004)). Because § 1983 does not create an independent cause of action for abuses of power and Plaintiff's abuse of power claim relies on the same allegations and constitutional deprivations as the other causes of action, the Court **dismisses** the abuse of power claim (Count VII) as redundant. *Id.* at *8 (dismissing abuse of power claim as duplicative of malicious prosecution claim).

### iii.    *The Public Defender and Attorney Did Not Act Under Color of Law*

Plaintiff sued the Public Defender and her Attorney for malicious prosecution (Count II) and violating her Second, Sixth, and Fourteenth Amendment rights (Counts III, IV, VIII). As before, the Court liberally construes those claims as arising under § 1983 and the NJCRA.

To state a § 1983 claim, the plaintiff must show: (1) someone deprived the plaintiff of a right (2) while acting color of state law. *Gomez*, 446 U.S. at 640. However, "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). At most, Plaintiff alleges the Public Defender poorly represented her, allowing her constitutional rights to be violated. (*See* Compl.) Because Plaintiff's claims arise from the Public Defender performing "a lawyer's traditional functions as counsel to a defendant in a criminal proceeding," *Dodson*, 454 U.S. at 325, the Public Defender was not acting under color of state law, and is not amenable to suit under § 1983. Likewise, a "private defense attorney cannot be construed as a person acting under the 'color of state law' within the meaning of § 1983." *Jackson v. City of Erie Police Dep't*, 570 F. App'x 112, 113 (3d Cir. 2014) (citing *Dodson*, 454 U.S. at 317–25). Accordingly, the Court **dismisses *with prejudice*** the claims against the Public Defender and Attorney (Counts II, III, IV, VIII).

### iv.    *The Court Stays the Claims Against Oliveri*

The Court has a "virtually unflagging" obligation to hear cases within its jurisdiction. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). *Younger* abstention is an exception to that rule. *Younger v. Harris*, 401 U.S. 37, 43 (1971). Under *Younger* and its progeny, the Court must abstain from hearing a case when "federal adjudication would disrupt an ongoing state criminal

proceeding." *Yang v. Tsui*, 416 F.3d 199, 201 (3d Cir. 2005). *Younger* abstention is appropriate where "there is an ongoing state proceeding that (1) is judicial in nature, (2) implicates important state interests, and (3) provides an adequate opportunity to raise federal challenges." *Gonzalez v. Waterfront Comm'n of N.Y. Harbor*, 755 F.3d 176, 181 (3d Cir. 2014) (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). While *Younger* generally applies to claims for injunctive relief, § 1983 claims "for damages which would imply the invalidity of a conviction on pending criminal charges are not cognizable." *Cade v. Newman*, 422 F. Supp. 2d 463, 466 (D.N.J. 2006) (citation omitted). The Court must "stay rather than dismiss claims" subject to *Younger* abstention. *Deakins v. Monaghan*, 484 U.S. 193, 202 (1988).

Having reviewed Plaintiff's state criminal docket, it appears her criminal prosecution is ongoing. Reviewing the *Younger* factors, abstention is plainly appropriate in this case. First, criminal prosecutions are judicial in nature. Second, Plaintiff's criminal prosecution implicates New Jersey's "important interest in bringing to justice those who violate its criminal laws." *Duran v. Weeks*, 399 F. App'x 756, 758 (3d Cir. 2010). Third, New Jersey's courts afford Plaintiff ample opportunity to raise federal challenges to her arrest and prosecution. *Id.* ("[Plaintiff] is free to move in state court for dismissal of the charges against him on Sixth Amendment grounds.").

Plaintiff's claims for false arrest and imprisonment, malicious prosecution, constitutional violations, and abuse of authority "arise from the same course of events that culminated in the criminal charges now pending against him in the state court." *Hunter v. Tripodi*, No. 25-16193, 2026 WL 172586, at *2 (D.N.J. Jan. 22, 2026). A ruling in Plaintiff's favor could interfere with or imply the invalidity of her prosecution, and the resolution of her charges may "elucidate, or even be dispositive" of her claims. *Id.*

9

Because *Younger* abstention precludes the Court from considering the claims against Oliveri, the Court **STAYS** the Complaint as to Oliveri. Upon resolution of her criminal charges, Plaintiff may so notify this Court and request reinstatement of the Complaint.

**IV.   CONCLUSION**

For the foregoing reasons, Plaintiff's motion to accept her untimely IFP application (ECF No. 18) is **GRANTED**. Plaintiff's untimely IFP application (ECF No. 18-1) is also **GRANTED**. The Complaint (ECF No. 1) is **DISMISSED *with prejudice*** as to Judge Abad, the Prosecutor, the Public Defender, and the Attorney. The Complaint (ECF No. 1) is **STAYED** as to Oliveri. Upon the resolution of the criminal charges in *State v. Sharita T. Patterson*, Indictment No. 24-03-342-I, Plaintiff may request reinstatement of the Complaint.

**DATED: 4/24/2026**

JULIEN XAVIER NEALS
United States District Judge

10